# EXHIBIT “A”

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **JANET HILL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION FILE** |
| **v.** | ) | **No. 1-11-cv-02991-JOF** |
| | ) | |
| **BANK OF AMERICA, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**AMENDED COMPLAINT**

1.

Defendants Bank of America Corporation ("Bank of America Corp."); Bank of America, National Association ("Bank of America, NA"); ReconTrust Company, N.A. ("ReconTrust"); BAC Home Loans Servicing, LP ("BAC Home Loans" and collectively with Bank of America Corp., and Bank of NA, ReconTrust, and Countrywide, "Bank of America"); Countrywide Financial Corporation ("Countrywide Financial"), Countrywide Home Loans, Inc. ("Countrywide Home" or "CHL"), Full Spectrum Lending, Inc. ("Full Spectrum"), Countrywide Home Loans Servicing, L.P. ("Countrywide Servicing" and collectively with Countrywide Financial, Countrywide Home and Full Spectrum, "Countrywide" ) engaged in a pattern and practice of deceptive conduct in violation of the Georgia Deceptive Trade Practices Act ("DTPA") in O.C.G.A. §10-1-371 et seq.

2.

This misconduct cut across virtually every aspect of Defendants' operations — from originating to servicing and, all too often, to foreclosing on the loan and home of Plaintiff. Countrywide misrepresented the nature and terms of her mortgage loans, ensnaring Plaintiff in a loan that she did not understand and could not repay. When Plaintiff defaulted on her loan, Defendants misrepresented whether, when, and how they would modify Plaintiff's loan. And when they failed to deliver this promised relief; Defendants provided to Plaintiff , recorded, and filed with Georgia courts fraudulent documents, sometimes without authority, to collect on her mortgage and foreclose on her home.

3.

Beginning in 2009, Bank of America also violated the Georgia DTPA by engaging in a pattern and practice of misrepresentations in their loan modification programs. Specifically, Defendants misled Plaintiff by:

- promising to act upon requests for mortgage modifications within a specific period of time, usually one or two months, but instead stranding Plaintiff without answers for more than six months or even a year;
- falsely promising Plaintiff that her initial, trial modifications would be made permanent if and when she made the required three payments on those plans, but then failing to convert her modification;
- falsely assuring Plaintiff that her home would not be foreclosed while her requests for modifications were pending, but sending foreclosure notices, scheduling

auction dates, and even selling Plaintiff's home while she waited for decisions;

- misrepresenting the eligibility criteria for modifications and providing Plaintiff with inaccurate and deceptive reasons for denying her requests for modifications;
- falsely notifying Plaintiff or credit reporting agencies that Plaintiff were in default when she was not; and
- offering modifications on one set of terms, but then providing Plaintiff with agreements on different terms, or misrepresenting that Plaintiff had been approved for modifications.

4.

Bank of America's misconduct in misrepresenting its mortgage modification program continues through the present and has been confirmed in interviews with Plaintiff, former employees, and other third parties and through review of relevant documents. Bank of America's own former employees describe an environment in which the Bank failed to staff its modification functions with employees with the training, skills, experience, authority, and information necessary to carry out the Bank's commitments. According to the employees, the modification process was chaotic, understaffed, wrought with technical problems, and not oriented to customers. According to at least one former employee, Bank of America reprimanded them for spending too much time with individual customers and directed them to limit call times with Plaintiff to an average of seven to ten minutes — leaving them almost no time to fully or accurately

answer questions or provide explanations, correct or update relevant information, or offer assistance.

5.

In addition, Bank of America misrepresented, both in communications with Plaintiff and in documents they recorded and filed, that they had authority to foreclose upon Plaintiff's home as servicer for the trusts that held these mortgages. Defendants knew (and were on notice) that these mortgages to those trusts, failing to deliver properly endorsed or assigned mortgage notes as required by the relevant legal contracts and state law, had never properly transferred. Because the trusts never became holders of these mortgages, Defendants lacked authority to collect or foreclose on their behalf and never should have represented they could.

6.

The course of unlawful conduct described in this Complaint began with Countrywide. As successor in interest to Countrywide, Bank of America is liable for its violations of Georgia law. After acquiring Countrywide, Bank of America engaged in new, repeated, and systemic violations of Georgia law for which Plaintiff seeks to hold it responsible.

7.

Defendant Bank of America Corp. is *a* foreign corporation that is incorporated in Delaware, with its principal place of business located in Charlotte, North Carolina. At

all times material to this Complaint, Bank of America Corp. was doing business in the State of Georgia . Bank of America Corp. is the parent corporation of Bank of America, NA and a successor in interest to Countrywide Financial.

8.

Defendant Bank of America, NA is a national bank with its principal place of business located in Charlotte, North Carolina.  At all times material to this Complaint, Bank of America, N.A. was doing business in the State of Georgia . Bank of America, N.A. is the parent of BAC Home Loans and ReconTrust.

9.

Defendant BAC Home Loans services loans and is a subsidiary of Bank of America, with its principal place of business in Texas. On July 1, 2011, BAC Home Loans Servicing was merged into Bank of America, NA.  At all times material to this Complaint, BAC Home Loans was doing business in the State of  Georgia.

10.

Defendant ReconTrust is a wholly-owned subsidiary of Bank of America, N.A. that services defaulted mortgages. At all times material hereto, ReconTrust's principal place of business was located in California and ReconTrust was doing business in the State of Georgia.

11.

Defendant Countrywide Financial is a Delaware corporation and a thrift holding

company doing business in Georgia.

12.

Defendant Countrywide Home is a New York corporation licensed to do business in Georgia, is a wholly owned subsidiary of Countrywide Financial, and is or was a licensed mortgage banking organization.

13.

At all relevant times, defendant Countrywide Servicing is or was a Texas limited partnership directly owned by two wholly-owned subsidiaries of Countrywide Home. Countrywide Servicing serviced loans originated by Countrywide Home and for government and private entities.

14.

On July 1, 2008, Bank of America completed its purchase of Countrywide in an all-stock transaction that Bank of America has described as a merger. Former Countrywide shareholders were compensated with shares of a Bank of America subsidiary that was created solely for the transaction.

15.

Since Countrywide's acquisition, Bank of America has taken over servicing loans previously serviced by Countrywide, along with its own servicing portfolio. Former Countrywide customers now use Bank of America customer service resources, including Bank of America service centers and website (to which

customers are redirected from Countrywide's website). Former Countrywide customers receive mortgage statements from Bank of America, make their mortgage payments to Bank of America, and apply to Bank of America if they wish to modify their mortgages.

16.

The combined mortgage lending operations of Bank of America and Countrywide, including Countrywide's branch network and origination platform, now operate under the name Bank of America Home Loans. The servicing operations of Bank of America and Countrywide were merged into BAC Home Loans Servicing, LP.

17.

Countrywide has been completely integrated into Bank of America and has virtually ceased  to exist. In November 2008, Countrywide's assets were transferred to Bank of America. Countrywide has stopped independently filing financial statements. Instead, Countrywide's assets and liabilities are reported on Bank of America's financial statements, On April 27, 2009 Bank of America announced that "the Countrywide brand has been retired." Press Release, Bank of America, *Bank of America Responds to Consumer Desire for Increased Transparency in Home Loan Process with Tools that Clarify Mortgage Terms and Foster Informed Homeownership* (Apr. 27, 2009).

18.

Defendant securitized Plaintiff's loan with the Bank of New York, Mellon serving as Trustee but failed to grant her the right to rescind the loan as is required by law.

19.

The primary driver of Countrywide’s origination volume and loan types and features was the demand and price for these loans in the secondary market. See supra ¶ 27. Virtually all of the loans originated by Countrywide were securitized — grouped into collateral pools and sold to trusts pursuant to Pooling and Servicing Agreements (“PSA”), which governed, among other things, how the mortgages were to be delivered to the trusts. The trusts raised cash to pay for the loans by selling bonds or certificates to investors. Countrywide Servicing typically retained the rights to service (for a fee), the mortgages they sold in the secondary market.

20.

The PSA’s for Countrywide mortgages typically required Countrywide to endorse the mortgage note (“Note”) and deliver the original Note to the trustee (“Trustee”) of the securitization trust (“Trust”). In order for the transfer to be valid, the properly endorsed, original Note had to be delivered before the trust closed; any transfer outside of that period would violate the governing instrument of the

Trust. The failure to follow the terms of the PSA in transferring a Note would invalidate the transfer and mean that the Note never became part of the Trust.

21.

There is mounting evidence that Countrywide failed to follow the steps required to transfer its Notes into securitization Trusts. First, Countrywide failed to ensure that these Notes were properly assigned or endorsed. Second, Countrywide failed to deliver the original Notes to the Trusts, or provided Notes with incorrect terms, missing riders, or missing notary seals.

22.

The recent case of Kemp v. Countrywide provides a window into Countrywide's practices. 440 B.R, 624 (D.N.J. Nov, 16, 2010). In Kemp, Countrywide attempted to transfer certain mortgages it originated to a Trust for which Bank of New York served as Trustee. Id. at 627, The PSA required Countrywide to deliver the original mortgage Notes, endorsed in blank. Id. at 627. The Note that was the subject of the Kemp litigation was not endorsed in blank nor delivered to Bank of New York. Id. at 629. The only evidence of an endorsement was an undated Allonge, created only weeks before trial in the case (and not at the time of securitization), which purported to endorse the Note to Bank of New York as Trustee; the Allonge also was never attached to the Note. id at 62S. An employee, Linda DeMartini testified that Mr, Kemp's original Note never left

Countrywide's possession and that Countrywide customarily held onto the original Notes. Id at 628.

23.

Therefore, Bank of New York did not have authority to enforce the Note and foreclose. While Countrywide may have remained the holder of the Note, it filed its claim for repayment as servicer to the Trust, and not as the holder. The Court concluded: "Because the Bank of New York has no right to enforce the note, Countrywide as its agent and servicer cannot enforce the note." Id. at 634. 142. In the wake of this testimony, CNN identified and reviewed foreclosures filed in two New York counties between 2006 and 2010 in which Bank of New York was foreclosing on behalf of a Countrywide securitization trust, Abigail Field, At Bank of America, More Incomplete Mortgage Docs Raise More Questions, Fort., (June 3, 2011), http://finance.fortitne.cnn.com/2011/06/03/at-bank-ofarnerica-more-incomplete-mortgage-does-and-more-questions/. None of the 104 Countrywide loans CNN examined were endorsed by Countrywide: "These notes ostensibly belong to over 100 different Countrywide securities ... If the lack of endorsement on these notes is typical — and 104 out of 104 suggests it is — the problem occurs across Countrywide securities ..." Id.

24.

On information and belief, as servicer, Bank of America and its subsidiaries and agents similarly sought to enforce mortgage Notes in Georgia, engaged in collection activity in Georgia, pursued nonjudicial foreclosure proceedings in Georgia, defended foreclosure actions in Georgia, and filed proofs of claim in bankruptcy in Georgia in instances in which Bank of America did not have authority to act. In so doing, Bank of America misrepresented its authority, in violation of the DTPA. See Georgia 10-372 ("Knowingly makes false statement of fact").

25.

As servicer, Bank of America and its agents was responsible for recording and sending to borrowers Notices of Default/Notices of Election to Sell, notarized documents that indicate that it is acting as agent for the beneficiary of the mortgage to "cause the trust property to be sold to satisfy the obligations secured thereby." Bank of America also recorded and sent to consumers Notices of Trustee Sales, which announced the particulars of the sale of the property, and made filings in foreclosure and bankruptcy actions in Nevada courts. These documents (among others) were deceptive in that they misrepresented the parties authorized to foreclose and indicated that Countrywide had the authority to take or sell the borrowers' properties as a result of default on those Notes. As explained above, Countrywide did not have that. authority.

26

Countrywide knew that it did not have authority as servicer for the Trusts to enforce invalidly transferred Notes. Deficiencies in transfers to securitization Trusts were noted in discrepancy reports issued by Trustees, such as Bank of New York ("BNY"), and shared with Countrywidc.26 Among 26 A Trust's governing instrument requires the trustee to review the loan documents on or before the closing date. The trustee must review the documents and, if anything is missing or materially defective, the trustee must notify the servicer and sponsor of the trust.
the shortcomings specifically identified was Countrywide's failure to deliver original Notes with proper assignments or endorsements, missing documents, incorrect terms, missing title policies, and other defects. Despite this warning, Countrywide did not remedy many of the ineffective transfers. In fact, Countrywide's botched transfers of mortgage Notes was one ground for a proposed $8.5 billion settlement between Bank of America and various investors who bought certificates in 530 Countrywide securitizations for which Bank of New York was trustee. Verified Petition at 1, In re The Bank of New York Mellon, No. 651786/2011 (N.Y. Sup. Ct. June 29, 2011).27

27.

These are not mere technicalities. The PSA's spelled out a specific procedure in order to ensure a proper transfer, protect the Trusts as the holders in

due course, and avoid subjecting the Trusts to taxation. In addition, borrowers need to know the actual holders of their mortgages so that, for example, they can investigate and any assert available defenses in foreclosures, including that the agent of the trustee lacks authority or standing under the Note.

28.

On August 4, 2011, the New York Attorney General filed an objection to that settlement. Mem. of Eric T. Schneiderman, Attorney General of the State of New York, In Supp. of Mot. to Intervene, In re The Bank of New York Mellon, No. 6517856/2011. The settlement, if approved by the court, would release BNY from liability as Trustee for ensuring that Notes were properly deposited into the Trusts. Id. at n. 1. The New York Attorney General claimed that Countrywide's failures to properly convey its interests into the securitization Trusts was so pervasive that BNY must have known about them. Verified Pleading in Intervention, Ex. A to Affirmation of Amir Weinberg, In re The Bank of New York Mellon, No. 6517856/2011 (N.Y. Sup. Ct. Aug. 5, 2011). Moreover, the New York Attorney General noted that the ineffective transfers raised questions about BNY's authority to foreclose: "[Countrywide's] ultimate failure... to transfer complete mortgage loan documentation to the Trusts hampered the Trusts' ability to foreclose on delinquent mortgages, thereby impairing the value of the notes

secured by those mortgages. These circumstances apparently triggered widespread fraud, including BoA’s fabrication of missing documentation.” Id. at 10.

29.

Countrywide’s misrepresentations, and the misrepresentations made by its agents and successors in interest, about the true holders of Plaintiff's mortgage Notes and its authority to pursue collections or foreclosures as a matter of law constitute deceptive practices where and because Countrywide failed to properly transfer these Notes to the securitization Trusts on whose behalf it serviced the debts.

30..

The Defendant entered into a consent judgment on about October 9, 2009 with the Attorney General of forty states. The agreement .

31.

Plaintiff re-alleges all preceding paragraphs in their entirety.

32.

Section 4 of the Consent Judgment requires Defendants to provide modifications to Eligible Borrowers.

33.

Section 4.60 of the Consent Judgment provides that the foreclosure process “will not be initiated or advanced for the period necessary to determine such

Eligible Borrower's interest in retaining ownership and ability to afford the revised mortgage terms, as well as the investor's willingness to accept a loan modification."

34.

Section 4.9 of the Consent Judgment requires Defendants to "ensure that offers of loan modifications under this Judgment...are made to Eligible Borrowers, on average, no more than 60 days after such Eligible Borrowers make contact with the applicable CFC Servicer and provide any required information concerning a possible modification."

35.

Section 4.3 of the Consent Judgment prohibits Defendants from increasing Eligible Borrowers' interest rates as a part of a modification under NHRP. 172. Section 4.3 of the Consent Judgment requires Defendants to provide Eligible Borrowers with "streamlined modifications."

36.

Defendants have breached the terms of the Consent Judgment by:

a. failing to provide modifications to Eligible Borrowers;

b. proceeding with foreclosures while Eligible Borrowers were awaiting decisions on their modification requests;

c. failing to make decisions on modification requests from Eligible Borrowers within 60 days, on average;

d. raising Eligible Borrowers' interest rates despite their commitment to lowering them; and e. failing to provide Eligible Borrowers with streamlined modifications by requiring them to submit extensive documentation,

37.

Therefore, violations of the Consent Judgment also constitute violations of these provisions of the DTPA.

38.

WHEREFORE, Plaintiff respectfully requests that the Court:

(a.) Enter a declaratory judgment that the Defendant's operation of their loan modification, loss mitigation, and foreclosure programs has violated, and continues to violate, the Georgia Deceptive Trade Practices Act, O.C.G.A. §10-1-371 et seq.;

(b.) Prohibit Defendants from continuing the course of conduct alleged herein as violating the Georgia Deceptive Trade Practices Act, O.C.G.A. §10-1-371 et seq. as written now or amended in the future.

(c.) Order Defendants to pay a civil penalty in a sum not to exceed $5,000 per violation against any Defendant found by the Court to have

engaged in any method, act or practice declared unlawful under the above-cited statutes;

(d.) Order Defendants to pay a civil penalty in a sum not to exceed $12,000 per violation against any Defendant found by the Court to have engaged in any method, act or practice declared unlawful under the above-cited statutes; Order Defendants to pay restitution pursuant to O.C.G.A. §10-1-371 et seq.;

(e.) Issue an order allowing the State to terminate its Consent Judgment with Defendants on the grounds that Defendants have materially breached the terms of the Judgment;

(f.) Enter a declaratory judgment that the Countrywide's loan origination practices alleged herein violated the Georgia Deceptive Trade Practices Act, O.C.G.A. §10-1-371 et seq.

(g.) Order Defendants to cover the costs incurred by municipalities and other homeowners due to vacant foreclosed properties that secured residential mortgage loans originated or serviced by Countrywide;

(h.) Order Defendants to pay restitution pursuant to Section 10.4 of the Consent Judgment;

(i.) Order Defendants to pay the costs of this action; including costs of investigation, pursuant to Georgia Deceptive Trade Practices Act, O.C.G.A. §10-1-371 et seq.; and

(j.) Order such other and further relief as the Court may deem just and proper.

OR IN THE ALTERNATIVE to Paragraphs 6 through 9 above, in the event the Court does not find a material breach to terminate the Consent Judgment, the Plaintiff respectfully requests that the Court:

(k) Enter a declaratory judgment that the Defendant's operation of its loan modification program has violated the Georgia Deceptive Trade Practices Act, O.C.G.A. §10-1-371 et seq.

(l) Prohibit the Defendant from continuing the course of conduct alleged herein as violating the Consent Judgment and the Georgia Deceptive Trade Practices Act, O.C.G.A. §10-1-371 et seq.

(m) Hold Defendants in contempt and order them to comply immediately with all provisions of the Consent Judgment pursuant to Section10.4 of the Consent Judgment.

(n) Extend the Termination Date established in the Consent Judgment and impose additional reporting requirements to allow the Plaintiff to evaluate Defendants' compliance.

(o) Order Defendants to pay a civil penalty in a sum not to exceed $10,000 per violation against Plaintiff found by the Court to have violated a provision of the Consent Judgment.

This 10th day of October, 2011.

Respectfully submitted,

/s/Greg Bailey

Gregory T. Bailey
Georgia Bar No. 032075
Attorney for Plaintiff

Greg T. Bailey & Associates
5682 Palazzo Way, Suite 101
Douglasville, Georgia 30134
Telephone: 404-397-1975 ext. 1100
Personal Fax: 404-755-1945
Email: attygregtbailey@msn.com

## CERTIFICATE OF FONT TYPE, SIZE AND SERVICE

This is to certify that I have this date presented this document in Times New Roman, 14 point type in accordance with L.R. 5.1(C), and that I electronically filed the document with the Clerk of Court using the CM/ECF system.

This 10th day of October, 2011.

/s/Greg Bailey
Gregory T. Bailey
Georgia Bar No. 032075
Attorney for Plaintiff

Greg T. Bailey & Associates
5682 Palazzo Way, Suite 101
Douglasville, Georgia 30134
Telephone: 404-397-1975 ext. 1100
Personal Fax: 404-755-1945
Email: attygregtbailey@msn.com